UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

BARNET MARINE INC.,                             :
                                                :
         Plaintiff,                          :
                                                :
    against                                 :          **VERIFIED COMPLAINT**
                                                :
LAUREL D SHIPPING LLC (n/k/a as Laurel          :
Shipping LLC),                                  :
                                                :
        Defendant.                          :

----------------------------------------------------------------X

      Plaintiff, BARNET MARINE INC. ("Barnet" or "Plaintiff"), by and through its attorneys,

Lennon, Murphy & Phillips LLC, complaining of the Defendant LAUREL D SHIPPING LLC,

now known as Laurel Shipping LLC ("Laurel" or "Defendant"), as and for its Verified Complaint,

alleges upon information and belief the following:

## THE PARTIES, JURISDICTION AND VENUE

      1.     Plaintiff Barnet is a foreign corporation organized and existing under and by virtue

of the laws of the Marshall Islands with an office and place of business at The Trust Company of

the Marshall Islands, Inc., Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro,

Republic of the Marshal Islands, MH 96960.

      2.     Plaintiff is the registered owner of the commercial motor tanker vessel CE-NIRIIS

("Vessel").

      3.     Upon information and belief, Defendant is a limited liability company organized

under the laws of the State of Delaware with a registered business address of 9 Battery Road, #15-

01 Straits Trading Building, Singapore.

4.      Upon information and belief, Defendant is now known as Laurel Shipping Company LLC and also has an office and place of business at 58 Commerce Road, Stamford, CT 06902.

5.      This action falls under the Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333 in that it is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. *See Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.,* 697 F.3d 59 (2d Cir. 2012).

6.      Venue is proper in this District as the parties designated New York, New York as the forum for dispute resolution in their contract.

## FACTS

7.      By a charter party dated July 9, 2020, on the BPVoy4 form (hereinafter "Charter Party"), Plaintiff, as Owner, chartered the Vessel to Defendant, as Charterer, for loading 1-2 safe port(s) Singapore, etc. to 1-2 safe ports China, including Hong Kong. *A true and correct copy of the Charter Party is attached hereto as Exhibit A ("Ex. A").*

8.      The Charter Party provides for 96 hours of Vessel laytime[1] with Sundays and holidays included. *Ex. A.*

9.      The Charter Party provides for demurrage[2] at the rate of $15,000.00, per day, pro rata. *Ex. A.*

10.     The Charter Party incorporated a bespoke additional clause pertaining to the COVID-19 Pandemic entitled "Corona Virus Clause," which provides as follows:

---

[1] Laytime is the period of time provided to the Charterer to perform cargo operations at loadport or discharge port without charge and which commences following the vessel's tender of Notice of Readiness and arrival of the vessel as defined in the charter party.

[2] Demurrage is the amount due the Vessel Owner from the Vessel Charter for use of the Vessel beyond allowed laytime as agreed in the charter party.

*CORONA VIRUS CLAUSE*

*IF THE VESSEL IS DELAYED IN BERTHING, LOADING AND/OR DISCHARGING AND/OR IS OTHERWISE DELAYED DUE TO MEASURES ENACTED BY THE PORT AND/OR ANY OTHER AUTHORITY RELATED TO THE CORONA VIRUS OUTBREAK, INCLUDING VESSEL QUARANTINE, WHICH DELAY ARISES AT ANY OF CHARTERER'S NOMINATED PORTS AND/OR UNDER OR IN CONNECTION WITH THE CHARTERERS' ORDERS UNDER AND DURING THIS CHARTER (HEREINAFTER CALLED A "CORONA VIRUS DELAY"), BE THE CORONA VIRUS DELAY PRIOR TO OR AFTER THE EXPIRATION OF LAYTIME, THE LAYTIME USED OR, IF THE VESSEL IS ON DEMURRAGE, TIME ON DEMURRAGE EQUAL TO THE PERIOD OR PERIODS OF CORONA VIRUS DELAY AS JUST DESCRIBED SHALL COUNT AS FULL LAYTIME OR TIME ON DEMURRAGE IF THE VESSEL ALREADY ON DEMURRAGE. TIME SHALL ALSO COUNT AS USED LAYTIME OR TIME ON DEMURRAGE WHERE VALID NOR HAS NOT BEEN TENDERED DUE TO DELAY IN OBTAINING FREE PRATIQUE AS A RESULT OF PRECAUTIONS PERTAINING TO THE CORONA VIRUS, INCLUDING BUT NOT LIMITED TO DELAYS CAUSED BY NON-AVAILBILITY OR INSUFFICIENT NUMBER OF INSPECTORS REQUIRED TO ATTEND FOR THE PURPOSES OF GRANTING FREE PRATIQUE. SHOULD CHARTERER'S NOMINATED PORT BE CLOSED BY THE PORT AND/OR ANY OTHER COMPETENT AUTHORITY DUE TO THE CORONA VIRUS OR CORONA VIRUS RELATED CAUSES, ALL TIME WAITING CAUSED THEREBY SHALL COUNT AS USED LAYTIME AND/OR TIME ON DEMURRAGE. THE CHARTERERS SHALL INDEMNIFY OWNERS AGAINST THE FOLLOWING ADDITIONAL COSTS, EXPENSES OR LIABILITIES INCURRED BY OWNERS AND ARISING DIRECTLY OUT OF THE VESSEL VISITING A PORT AFFECTED BY THE CORONA VIRUS DURING THIS CHARTER: SCREENING COSTS, CLEANING COSTS, COSTS OF REPLACING CREW, COSTS IN FUMIGATING AND/OR QUARANTINING THE VESSEL AND ITS CREW, AND THE OBTAINING OF MEDICAL TREATMENT FOR ANY INFECTED CREW. NOTWITHSTANDING THE FOREGOING, ANY PERIOD OF DELAY INCURRED UNDER THIS CHARTER SHALL NOT COUNT AS LAYTIME AND/OR TIME ON DEMURRAGE UNDER THIS CHARTER TO THE EXTENT THAT IT IS ALSO CAUSED OR PROLONGED BECAUSE OF MEASURES OR RESTRICTIONS WHICH ONLY APPLY TO THE VESSEL OR HER CREW DUE TO HER HAVING CALLED AT, OR TRADED/TRANSITED TO OR THROUGH, AT*

> *ANY TIME PRIOR TO THE COMMENCEMENT OF PERFORMANCE OF THIS CHARTER, A COUNTRY, PORT OR OTHER LOCATION AFFECTED BY THE CORONA VIRUS OUTBREAK.*

*Ex. A.*

11.    The Charter Party also includes a "Quarantine" provision at Clause 29 which states as follows:

> *QUARANTINE*
> *If~~ Charterers ~~require~~ **never knowingly to order** the Vessel to proceed to any port at which, at the time when the Vessel is ordered to that port, there is quarantine ~~then time spent or lost whilst the Vessel is detained due to such quarantine shall count as laytime or, if the Vessel is on demurrage, as demurrage. However, if quarantine is subsequently declared whilst the Vessel is on passage to such port Charterers shall not be liable for any delay caused by such quarantine.~~ Should Charterer unknowingly order vessel to port where a quarantine is in place, any delay incurred shall count as laytime, or if on demurrage, as demurrage.*

*Ex. A.*

12.    The Vessel loaded cargo without incident offshore at Singapore and thereafter sailed for Hong Kong on July 29, 2020 at 2130 local time pursuant to Defendant's voyage instructions under the Charter Party.

13.    Upon information and belief, at the time of Defendant's instructions under the Charter Party directing the Vessel to proceed to Hong Kong, there were COVID 19 restrictions and regulations in place imposed by government authorities, including a mandatory fourteen (14) day quarantine for any vessel seeking to enter the Port of Hong Kong on which one or more crew members tested positive for COVID 19.

14.    Specifically, such provisions included crew change arrangements (with effect from July 29, 2020) pursuant to which a commercial vessel would not be permitted to enter into the port of Hong Kong if there was a confirmed COVID-19 case on board.   *True and correct*

*copies of the HKSAR Government Press Releases dated July 26, 2020 and July 29, 2020 are*
*attached hereto as Exhibits B and C.*

15.     In addition, pursuant to provisions of the Prevention and Control of Disease Ordinance (Cap. 599) and the Prevention and Control of Disease Regulation (Cap. 599A) (hereinafter "Regulations"), the Port Health Authority would order any vessel with a confirmed case of COVID-19 on board, and the rest of her crew, to quarantine at the port anchorage area for a 14-day period.   *True and correct copies of Cap. 599 and Cap. 599A are respectively attached hereto as Exhibits D and E.*

16.     The Regulations further provide that upon completion of any quarantine period required thereunder, the port of Hong Kong's Health Authority would issue free pratique[3] to allow for the vessel to proceed to berth.

17.     These Regulations rendered Hong Kong a "port where a quarantine is in place," as defined in the Charter Party, which required any vessel upon arriving at Hong Kong with a suspected case of COVID-19 to be quarantined.

18.     Under the aforesaid "Corona Virus Clause" and Clause 29 of the Charter Party, any delays in berthing the Vessel at Hong Kong before free pratique was granted count as laytime or time on demurrage.

19.     Prior to the Vessel's arrival at Hong Kong, on August 4, 2020 the Vessel's Master advised the local agents and receiver at Hong Kong that one crew member had a high body temperature.

---

[3] "Free Pratique" is a certificate from the port-health-authorities that the ship is without infectious disease or plague on board and therefore permitted to enter port and to allow people to board and disembark.

20.     Through the charter broker, Defendant wrote to Plaintiff on August 4, 2020, stating that it had "been informed by receiver that 2 crew members are having body temperature of 38 C and above.  Please urgently check with owner about this and what they are going to do in the situation?  Also please urgently provide record of crew body temperature record."

21.     Promptly on August 4, 20202, Plaintiff responded to Defendant's email stating, in relevant part: "there is only one crew member who is experiencing fever. . . .  Master has immediately implemented the covid 19 outbreak management plan and as a result crew member has been put in isolation. . . .  Master has reported the case to Hong Kong Port Authorities via Agents."

22.     Between August 4th and August 6th, Defendant sent numerous inquiries to Plaintiff requesting information regarding the situation on board the Vessel and concerning the crewmember suspected of having possibly contracted the coronavirus.

23.     Notwithstanding the situation with the suspected illness of the one crewmember on board the Vessel, Defendant maintained its voyage order for the Vessel to call at Hong Kong.

24.     On August 6, 2020 the Vessel arrived at Hong Kong and tendered her first Notice of Readiness ("NOR").  *A true and correct copy of the first NOR is attached hereto as Exhibit F.*

25.     On August 6, 2020 a Health Officer from the Port of Hong Kong attended on board the Vessel and the crew member with an elevated temperature was tested, determined to be COVID-19 positive, and was taken off the Vessel and sent to a local hospital for treatment.

26.     On August 7, 2020 the same Health Officer re-attended the Vessel and proceeded to test the remaining crew for COVID-19.

27.     August 7, 2020, the Vessel's Master was advised by the Hong Kong Health Department that the Vessel was ordered under a fourteen (14) day quarantine.

28.     On August 8, 2020 seven crewmembers were determined to be COVID-19 positive.

29.     On August 8, 2020, Plaintiff investigated the feasibility and costs of having a shoreside contractor disinfect the Vessel, as well as the possibility of replacing the entire crew.

30.     Due to the quarantine restriction imposed by the Hong Kong authorities Plaintiff was not permitted to replace the Vessel's crew.

31.     On August 10, 2020, due to the multiple additional crew members who had tested positive for COVID-19, the Hong Kong authorities advised that the Vessel's quarantine period should be extended, despite Plaintiff's objections.

32.      On August 11, 2020 when another crewmember was determined to be COVID-19 positive and had to disembark from the Vessel on August 12, 2020, the Vessel's quarantine period was extended until August 25, 2020.

33.     Subsequent to the Vessel being put into extended quarantine, Plaintiff cancelled arrangements for disinfecting the Vessel.

34.     The additional crew members infected with COVID-19 were disembarked and sent to a local hospital for treatment.

35.     One crew member, an able seafarer, was tested for COVID-19 with ambiguous results, and was thereafter re-tested and found negative for COVID-19 and returned to the Vessel.

36.     On August 21, 2020 final re-testing was performed on all remaining crew members.

37.     On August 22, 2020 retesting was performed on the crew member determined to be COVID-19 negative on August 11, which re-test revealed he was now COVID-19 positive, whereafter he was sent for treatment at a local hospital on August 23, 2020, as a result of which,

and over the Plaintiff's protests, the Vessel's quarantine period was further extended by the Hong Kong authorities until September 6, 2020.

38.    On September 6, 2020, all of the Vessel's crewmembers were tested for COVID-19 and received negative results.

39.    The Vessel was thereafter granted free pratique on September 7, 2020.

40.    On a daily basis from August 7, 2020 until September 13, 2020 the Vessel re-tendered NOR.  *True and correct copies of the Vessel's NOR's from August 7 to September 13, 2020 are attached hereto as Exhibit G.*

41.    On September 13, 2020 the Vessel proceeded to come alongside the berth at Hong Kong and carry out cargo discharge operations, which ultimately completed on September 15, 2020.

42.    The Charter Party includes at Clause 20 a claims time bar which, as amended, provides as follows

> *CLAIMS TIME BAR*
>
> *20.1   Charterers shall be discharged and released from all liability in respect of any claim for demurrage, deviation or detention which Owners may have under this Charter unless a claim in writing has been presented to Charterers, together with all supporting documentation substantiating each and every constituent part of the claim, within ninety (90) days of the completion of discharge of the cargo carried hereunder.*
>
> *20.2   Any other claim against Charterers for any and all other amounts which are alleged to be for Charterers' account under this Charter shall be extinguished, and Charterers shall be discharged from all liability whatsoever in respect thereof, unless such claim is presented to Charterers, together with full supporting documentation substantiating each and every constituent part of the claim, within one hundred and ~~eighty (180)~~ **twenty (120)** days of the completion of discharge of the cargo carried hereunder.*

*Ex. A.*

43.     On or about October 20, 2020, in accordance with the requirements of Clause 20, Plaintiff timely submitted a demurrage claim to Defendant premised upon Notice of Readiness being valid and effective on September 7, 2020 at 0600 hours ("Original Demurrage Claim").  *A true and correct copy of the Original Demurrage Claim is attached hereto as Exhibit H.*

44.     Plaintiff's Original Demurrage Claim submitted to Defendant was in the sum of $97,500 – covering 6.5 days of demurrage.

45.     Three months later, on or about January 21, 2021, Defendant responded to Plaintiff's Original Demurrage Claim contesting any waiting time due to what it stated were "COVID issues," but conceding liability for 16:06 hours of time on demurrage, equivalent to $10,062.50.  *A true and correct copy of Laurel's response to Barnet's Original Demurrage Claim is attached hereto as Exhibit I.*

46.     Based on the Corona Virus Clause and the Quarantine Clause in the charter party contract, on or about January 29, 2021, Plaintiff submitted an amended demurrage claim to Defendant premised on the original NOR tendered on August 6, 2020 being the effective Notice of Readiness.  ("Amended Demurrage Claim").  *A true and correct copy of the Amended Demurrage Claim is attached hereto as Exhibit J.*

47.     Plaintiff's Amended Demurrage Claim sought payment of demurrage in the sum of $573,437.55 covering 38.22917 days of demurrage at Hong Kong.

48.     Plaintiff's Amended Demurrage Claim served only to revise the Original Demurrage Claim which was served within the contractual time bar period under Claus 20 of the Charter Party and served only to increase the amount of the demurrage claimed.

49.     The additional documents Plaintiff submitted to Defendant in support of the Amended Demurrage Claim were of the same nature and character as those submitted in support of the Original Demurrage Claim – all of which were already in Defendant's possession.

50.     Defendant responded to Plaintiff's Amended Demurrage Claim on or about February 3, 2021, stating:

> *We confirm receipt of Owners demurrage claim in the amount of $573,437.55 replacing their prior claim in the amount of $97,500.00.*
>
> *Please note that Owners have now provided additional documents to support their new claim that were not included with their original claim received on 21Oct20.*
>
> *These new supporting documents were not provided within the timebar clause agreed as per below, therefore we cannot accept Owners new claim and as such we request said claim to be withdrawn.*

*A true and correct copy of Defendant's response to Plaintiff's Amended Demurrage Claim is attached hereto as Exhibit K.*

51.     Defendant's objection to Plaintiff's Amended Demurrage Claim on the basis that it provided additional documents not included with the original claim is factually incorrect because Defendant was already in possession of all of the relevant claim documentation, including:

> a.      the original Notice of Readiness dated August 6, 2020, tendered upon the Vessel's arrival, which was re-tendered to the Defendant and its agents 31 times between August 7th and September 6th as reminders and without prejudice to the original tender on August 6, 2020, all of which the Defendant acknowledged receiving;

b.   on September 7, 2020, the same date the Vessel was granted free pratique, the Vessel tendered a further Notice of Readiness, which the Defendant acknowledged receiving;

c.   the September 7, 2020 Notice of Readiness was re-tendered to the Defendant and its agents 5 times between September 8, 2020 and September 12 2020, as reminders, and without prejudice to the original tender on September 7, 2020, all of which the Defendant acknowledged receiving; and

d.   On September 13, 2020, upon the Vessel berthing at the terminal, Notice of Readiness was re-tendered to the Defendant and its agents, without prejudice to the original tender on September 7, 2020, which the Defendant acknowledged receiving.

52.   Plaintiff's Amended Demurrage Claim merely amended the calculation of the amount of demurrage due from Defendant to Plaintiff under the Charter Party and was premised upon claim documentation timely and contemporaneously provided to the Defendant.

53.   Despite due demand, Defendant has failed and refused to pay the Amended Demurrage Claim.

54.   The Charter Party is governed by U.S. law and for resolution of disputes arising thereunder to be submitted to the exclusive jurisdiction of the courts situated in the City of New York.

## CLAIM FOR BREACH OF CONTRACT

55.   Plaintiff has performed in full all of its obligations to Defendant under the Charter Party.

11

56.     Defendant has not paid any compensation to Plaintiff for either the Original Demurrage Claim or the Amended Demurrage Claim.

57.     Laurel's failure to pay Plaintiff for the Amended Demurrage Claim constitutes a breach of contract for which Plaintiff has suffered damages in the principal amount of $573,437.55.

58.     Alternatively, Defendant's failure to pay Plaintiff for the Original Demurrage Claim constitutes a breach of contract for which Plaintiff has suffered damages in the principal amount of $97,500.00.

59.     By reason of the foregoing, Plaintiff has sustained damages in the current amount of approximately $670,937.55, exclusive of interest, costs, fees, including reasonable attorneys' fees, and expenses for which Defendant is liable under the terms of the Charter Party and at law.

60.     Plaintiff anticipates it will recover the following sums:

| | |
|---|---|
| A.  Unpaid Amended Demurrage Claim - | $573,437.55 |
| B.  Interest - | $17,815.84[4] |
| TOTAL: | $591,253.39[5] |

## **CLAIM FOR RULE B ATTACHMENT**

61.     On information and belief, Defendant maintains a bank account at JPMorgan Chase Bank NA located at 277 Park Avenue New York, NY 10172.

62.     The Defendant also has asserted a chose in action that is currently pending within this District and subject to the jurisdiction of this Court, in the form of Twenty-Nine Million Dollar ($29,000,000.00) Counterclaim asserted against Seawolf Tankers Inc. in the action

---

[4] Interest is calculated at 9% per annum as stated in New York Civil Practice Law and Rules § 5004.
[5] Calculated to June 4, 2021.

pending in this Court under Civil Case No. 1:20-cv-05198-RA. *See Affidavit of Patrick F. Lennon in Support of Prayer for Issuance of Maritime Attachment.*

63.     The Defendant cannot be found within this District for purposes of Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure ("Supplemental Rules").

64.     Plaintiff seeks an order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules attaching, inter alia, any property of the Defendant held by non-party garnishee, JPMorgan Chase Bank NA, Freehill, Hogan & Mahar, LLP (as Defendant's counsel in Civil Case No. 1:20-cv-05198-RA), and any other non-party garnishee(s) that may be identified, within the District for the purpose of obtaining personal jurisdiction over Defendant and to secure Plaintiff's claims as described above in total sum of $590,405.47.

**WHEREFORE**, Plaintiff, Barnet Marine Inc., demands judgment as follows:

A.     Awarding Plaintiff damages in the sum of $573,437.55, together with nine (9) percent annual interest thereon at the statutory New York interest rate authorized by Civil Practice Law and Rules § 5004 to the date of the award;

B.      Alternatively, awarding Plaintiff damages in the sum of $97,500.00, together with nine (9) percent annual interest thereon at the statutory New York interest rate authorized by Civil Practice Law and Rules § 5004 to the date of the award;

C.     That process in due form of law issue against Defendant citing it to appear and answer under oath all and singular the matters alleged in this Complaint;

D.     For an order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts

and monies, tangible or intangible, or any other funds up to the amount of $591,253.39 belonging to, or for the benefit of the Defendant, including, but not limited to, such property as may be held or received in Defendant's name, or as may be held, received or held for its benefit at, or within the possession, custody or control of non-party garnishee, JPMorgan Chase Bank NA, Freehill, Hogan & Mahar, LLP, and any other non-party garnishee(s) that may be identified, including banking/financial institutions and/or other institutions, or such other garnishees which may be named, and that all persons claiming any interest in the same be cited to appear and pursuant to Rule B of the Supplemental Rules to answer the matters alleged in this Complaint;

E.      Awarding Plaintiff its reasonable costs and legal fees incurred in this action; and

F.      Awarding Plaintiff all such further and different relief as the Court may find just and necessary in the circumstances.

Dated:  June 8, 2021

> The Plaintiff,
> BARNET MARINE INC.
>
> By: _____
> Patrick F. Lennon
> Kevin J. Lennon
> LENNON, MURPHY & PHILLIPS, LLC
> The Graybar Building
> 420 Lexington Ave., Ste. 300
> New York, New York 10170
> (212) 490-6050 (T)
> (212) 490-6070 (F)
> pfl@lmplaw.net
> kjl@lmplaw.net

14