UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

BARNET MARINE INC.,

                    Plaintiff,

        -against-

LAUREL D SHIPPING LLC *now known as* LAUREL
SHIPPING LLC,

                    Defendant.

-------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 07/29/2022

21-CV-5071 (VEC)

OPINION & ORDER

**VALERIE CAPRONI, United States District Judge:**

Defendant Laurel Shipping LLC ("Laurel") moves (i) pursuant to Supplemental Rule E
for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil
Procedure to vacate a Rule B order of attachment on its property in this district[1] and (ii) pursuant
to Rule 12(c) of the Federal Rules of Civil Procedure for partial judgment on the pleadings. For
the reasons set forth below, Laurel's motion to vacate is DENIED, and its motion for partial
judgment on the pleadings is GRANTED.

## BACKGROUND[2]

Plaintiff Barnet Marine Inc. ("Barnet Marine") is a foreign corporation organized under
the laws of the Marshall Islands that owns the commercial motor tanker vessel CE-NIRIIS (the
"Vessel"). Amend. Compl., Dkt. 9 ¶¶ 1–2. Defendant Laurel is a limited liability company

---

[1] Laurel's motion seeks relief from the Court's June 10, 2021 Order issuing maritime attachment pursuant to
Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal
Rules of Civil Procedure. *See* Order, Dkt. 11.

[2] For the purpose of the two motions, the Court accepts Barnet Marine's factual allegations in its amended
complaint as true.

organized under the laws of the State of Delaware that charters such vessels. *Id.* ¶ 3.  By a

charter party dated July 2020, Laurel chartered the Vessel from Barnet Marine for a voyage that

included discharging cargo in Hong Kong. *Id.* ¶ 7.

With respect to demurrage, the charter party provides for 96 hours of laytime[3] and

demurrage[4] at the rate of $15,000 per day.  Charter Party, Dkt. 9-1 at 7–8.  The charter party

states, in part, that "if the vessel is on demurrage, demurrage shall commence, at each loading

and each discharge port, upon the expiry of six (6) hours after a valid [Notice of Readiness

("NOR")] has become effective . . . or when the Vessel commences loading, or discharging,

whichever first occurs." *Id.* at 12.  The charter party further provides that the "NOR shall not be

effective until . . . [f]ree pratique[5] has been granted or is granted within (6) hours of the Master

tendering NOR . . . ." *Id.* at 11.[6]  The charter party also establishes a time frame within which

demurrage claims must be submitted; in relevant part, the charter party provides: "Charterers

shall be discharged and released from all liability in respect of any claim for demurrage . . .

which Owners may have under this Charter unless a claim in writing has been presented to

---

[3]        Laytime is the period provided to the charterer to perform cargo operations without charge.  It commences
following the vessel's tender of a valid Notice of Readiness ("NOR") and arrival of the vessel as defined in the
charter party.  Amend. Compl., Dkt. 9 ¶ 8 n.1.

[4]        Demurrage is the amount due to the vessel owner from the charterer for use of the vessel beyond allowed
laytime as agreed in the charter party.  *Id.* ¶ 9 n.2.

[5]        Free pratique is a "certificate from the port-health-authorities that the ship is without infectious disease or
plague on board and therefore permitted to enter port and to allow people to board and disembark." *Id.* ¶ 16 n.3.

[6]        The charter party contains a "Coronavirus Clause," which states in part that "[i]f the vessel is delayed . . .
due to measures enacted by the port and/or any other authority related to the corona virus outbreak, including vessel
quarantine . . . the laytime used or, if the vessel is on demurrage, time on demurrage equal to the period or periods of
corona virus delay as just described shall count as full laytime or time on demurrage if the vessel is already on
demurrage." Charter Party, Dkt. 9-1 at 45.  The clause continues that "[t]ime shall also count as used laytime or
time on demurrage where valid NOR has not been tendered due to delay in obtaining free pratique as a result of
precautions pertaining to the corona virus, including but not limited to delays caused by non-availability of
inspectors required to attend for the purposes of granting free pratique." *Id.*

Charterers, together with all supporting documentation substantiating each and every constituent part of the claim, within ninety (90) days of the completion of discharge of the cargo carried hereunder." *Id.* at 21.

Prior to the Vessel's arrival in Hong Kong, the Vessel Master advised local authorities that a crewmember had a fever. Amend. Compl., Dkt. 9 ¶ 19. The Vessel arrived in Hong Kong and tendered its first NOR to the Hong Kong authorities on August 6, 2020. *Id.* ¶¶ 19, 23–24. That NOR was also tendered to Laurel on August 6, 2020 and re-tendered daily until September 13, 2020. *Id.* ¶ 40. After various crew members tested positive for COVID-19, the Vessel was ordered into quarantine. By September 6, 2020, all of the Vessel's crewmembers tested negative for COVID-19, and, on September 7, 2020, the Vessel was granted free pratique. *Id.* ¶¶ 25–43. The Vessel completed discharge operations on September 15, 2020. *Id.* ¶ 41.

Barnet Marine submitted its first demurrage claim for $97,500 on October 20, 2020 (35 days after completion of discharge). *Id.* ¶¶ 43–44. That claim calculated demurrage from September 7, 2020, the date of the first NOR tendered after the Vessel was granted free pratique. *Id.* On January 29, 2021 (136 days after the completion of discharge), Barnet Marine submitted what it characterized as an "amended demurrage" claim to Laurel for $573,437.55. *Id.* ¶¶ 46–47. The "amended" claim changed the premise for the claim from the NOR issued on September 7, 2020, to the NOR issued on August 6, 2020. *Id.* Laurel objects to both claims. *Id.* ¶¶ 45, 50.

Barnet Marine commenced this lawsuit on June 8, 2021, seeking $573,437.55 in damages for breach of contract for Laurel's failure to pay its "amended" demurrage claim, plus interest.[7]

---

[7]     Barnet Marine argues in the alternative that it is entitled to $97,500 in damages for Laurel's failure to pay its original demurrage claim. *See* Amend. Compl., Dkt. 9 ¶ 58.

*See* Compl., Dkt. 1.[8]  On the same date, Barnet Marine moved for maritime attachment pursuant

to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture

Actions of the Federal Rules of Civil Procedure.  *See* Mot. for Attach., Dkt. 7.  The Court

granted Plaintiff's motion.  *See* Order, Dkt. 11.  On September 3, 2021, Laurel moved to vacate

the attachment, *see* Not. of Motion, Dkt. 33, and moved for partial judgment on the pleadings

with respect to Barnet Marine's amended demurrage claim, *see* Not. of Motion, Dkt. 36.  Barnet

Marine opposes both motions.  Resp., Dkt. 49; Resp., Dkt. 50.

## DISCUSSION

### I.      Laurel's Motion to Vacate Is Denied[9]

"Once a plaintiff has carried his burden to show that his attachment satisfies the

requirements of Supplemental Rule B, a district court may vacate an attachment only . . . where

1) the defendant is present in a convenient adjacent jurisdiction; 2) the defendant is present in the

district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security

for a judgment." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 436 (2d Cir.

2006), *abrogated on other grounds by Shipping Corp. of India v. Jaldhi Overseas Pte Ltd.*, 585

F.3d 58 (2d Cir. 2009).  Laurel moves for vacatur pursuant to the first category; it argues that it

---

[8]      Following an order by the Court, Barnet Marine amended its complaint to include the required verification.
*See* Order, Dkt. 8; Amend. Compl., Dkt. 9; Fed. R. Civ. P. Supp. Rule B(1)(a) (stating that "a verified complaint
may contain a prayer for process" to attach a defendant's property).

[9]      Pursuant to Rule E(4)(f) of the Federal Rules of Civil Procedure, "[w]henever property is arrested or
attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be
required to show why the arrest or attachment should not be vacated or other relief granted consistent with these
rules." Fed. R. Civ. P. Supp. Rule E(4)(f).  Laurel did not request a hearing in its papers in support of its motion to
vacate the attachment. *See generally* Not. of Mot., Dkt. 33; Mem. of Law, Dkt. 35.  On June 15, 2022, the Court
ordered Laurel to clarify whether it was requesting a hearing or whether it would like the Court to decide the motion
without a hearing and based on the papers before it.  Order, Dkt. 55.  Laurel declined a hearing.  Letter, Dkt. 56.

"can be found in Connecticut, which is a 'convenient adjacent jurisdiction.'" Mem. of Law, Dkt. 35 at 4.[10]  The other two grounds for vacatur are not at issue.

A defendant is "found" within a given district if (i) it is subject to personal jurisdiction in that district and (ii) service of process may be effectuated with reasonable diligence within that district's geographical boundaries. *STX Panocean (UK) Co. v. Glory Wealth Shipping Pte Ltd.*, 560 F.3d 127, 130 (2d Cir. 2009).  The defendant bears the burden to establish any equitable grounds for vacatur. *See Aqua Stoli*, 460 F.3d at 445 n.5.  Because Laurel is not subject to personal jurisdiction in Connecticut, it is not "present" in a convenient adjacent jurisdiction;[11] Accordingly, Laurel is not entitled to equitable vacatur.

Although federal law defines the requirements of Rule B, "federal courts look to the relevant State law to determine if those requirements are met." *STX Panocean*, 560 F.3d at 131. Connecticut law requires a two-step inquiry to determine whether a court has personal jurisdiction over a defendant.  Courts must first consider whether jurisdiction is conferred by Connecticut's long-arm statutes. *See Powder Coating Consultants v. The Powder Coating Inst.*, No. 09-CV-200, 2010 WL 582613, at *2 (D. Conn. Feb. 16, 2010).  If personal jurisdiction is permissible under the long-arm statutes, courts next consider whether the exercise of jurisdiction comports with the due process clause of the Constitution. *See Metropolitan Life Ins. Co. v. Robertson–CECO Corp.*, 84 F.3d 560, 567 (2d Cir. 2006).

---

[10]     Barnet Marine argues that the District of Connecticut is not a convenient adjacent forum to the Southern District of New York. *See* Resp., Dkt. 50 at 2–4 (arguing that only intra-state districts may be considered convenient adjacent forums).  Because the Court finds that Laurel is not "found" in Connecticut, the Court declines to consider whether the District of Connecticut is a convenient adjacent forum to the Southern District of New York.

[11]     Barnet Marine argues that Laurel is not subject to service of process in the District of Connecticut. *See* Resp., Dkt. 50 at 10–11.  Because the Court finds that Laurel is not subject to personal jurisdiction in Connecticut and is therefore not "found" in the district, the Court declines to consider whether Laurel would be subject to service of process in the District of Connecticut.

Personal jurisdiction may be either general or specific. *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016). General, or "all-purpose," jurisdiction allows a court to adjudicate any cause of action against the defendant, regardless of where it arose. *Id.* Specific jurisdiction, on the other hand, "is available when the cause of action sued upon arises out of the defendant's activities in a state." *Id.*; *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). Laurel argues that it is subject to general jurisdiction in Connecticut. *See* Mem. of Law, Dkt. 35 at 7–8.[12]

### A.  Connecticut's Long Arm Statutes Do Not Reach Laurel

Connecticut's long-arm statutes limit the confines of general jurisdiction. *See* Conn. Gen. Stat. § 33-929(f); Conn. Gen. Stat. § 52-59b(a); *see also Thomason v. Chemical Bank*, 234 Conn. 281, 293 (1995) ("[T]he [Connecticut] legislature did not intend to authorize Connecticut courts to exercise the full measure of 'general' jurisdiction that would have been constitutionally permissible."); *Velazquez v. Gator Park, Inc.*, No. 17-CV-321, 2018 WL 1015331, at *2 (D. Conn. Feb. 22, 2018) (reiterating the same point of law).

The exercise of general jurisdiction in Connecticut requires that "the defendant could reasonably have anticipated being hauled into court [t]here by some person who had been solicited in Connecticut and that the plaintiff's cause of action is not materially different from an action that might have resulted from that solicitation." *Thomason*, 234 Conn. at 296. Indeed, "to satisfy general jurisdiction, the defendant must have specifically targeted Connecticut residents." *Velazquez*, 2018 WL 1015331, at *2.[13]

---

[12]     Because Laurel does not argue that it is subject to specific jurisdiction in Connecticut, the Court declines to consider that possibility.

[13]     Two of Connecticut's long-arm statutes are potentially relevant here. *See* Conn. Gen. Stat. § 33-929(f) (relating to foreign corporations); Conn. Gen. Stat. § 52-59b(a) (relating to foreign partnerships). Because Laurel is a limited liability company incorporated in Delaware, *see* Amend. Compl., Dkt. 9 ¶ 3, Laurel is considered a foreign limited liability company under Connecticut law. *See* Conn. Gen. Stat. § 34-243a(9). "[I]t remains unsettled

Laurel does not suggest that it targets Connecticut residents or that any cause of action

similar to that brought by Barnet Marine may arise from Laurel's dealings within Connecticut.[14]

*See Thomason*, 234 Conn. at 297–99 (finding the long-arm statute satisfied where the defendant

circulated advertisements in Connecticut encouraging Connecticut residents to do business with

the defendant).  Because Laurel has not provided any information about its activities that target

Connecticut residents, the exercise of personal jurisdiction over Laurel in Connecticut would not

comport with the state's long-arm statutes.  Because Laurel cannot be "found" in Connecticut for

the purposes of Rule E(4)(f), it is not entitled to equitable vacatur.

### B. The Exercise of Jurisdiction over Laurel in Connecticut Would Not Comport with the Constitution's Due Process Guarantee

Even if Laurel were subject to general jurisdiction in Connecticut under the state's long-

arm statutes, the exercise of general jurisdiction over Laurel in Connecticut would run afoul of

due process protections.  "[T]he exercise of personal jurisdiction over a defendant is informed

and limited by the U.S. Constitution's guarantee of due process, which requires that any

jurisdictional exercise be consistent with 'traditional notions of fair play and substantial justice.'"

*Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 625 (2d Cir. 2016).

Laurel argues that it is subject to general jurisdiction in Connecticut because it maintains

its principal place of business there.  *See* Mem. of Law, Dkt. 35 at 8; *see also Daimler AG v.*

---

whether a foreign limited liability company should be treated as a corporation or a partnership for purposes of the Connecticut long-arm statutes." *SS&C Technologies, Inc. v. Providence Inv. Mgmt., LLC*, No. 07-CV-484, 2008 WL 691702, at *2 (D. Conn. Mar. 12, 2008).

But that open question of law is irrelevant here because, without deliberate targeting of Connecticut residents, "there can be no purposeful availment of the laws of the State of Connecticut, and therefore long-arm jurisdiction cannot be proper" under either provision. *American Wholesalers Underwriting, Ltd. v. American Wholesale Ins. Group, Inc.*, 312 F. Supp. 2d 247, 257 (D. Conn. 2004).

[14]     Connecticut's long-arm statutes could reach Laurel if, for example, it chartered vessels from shipowners in Connecticut.

*Bauman*, 571 U.S. 117, 137 (2014) (stating that a corporation's principal place of business is a paradigm forum for general jurisdiction); *Brown*, 814 F.3d at 627 (2d Cir. 2016) ("*Daimler* established that, except in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business . . . .").

A company's principal place of business is "the place where [its] officers direct, control, and coordinate [its] activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92 (2010). "[A] corporation cannot dispositively declare . . . its principal place of business for jurisdictional purposes. Instead, a court draws this conclusion . . . ." *Helmsley-Spear, Inc. v. Ramfis Realty Inc.*, No. 03-CV-8482, 2003 WL 22801162, at *3 (S.D.N.Y. Nov. 25, 2003); *see also Hertz*, 559 U.S. 77 at 96–97 (requiring that parties support their jurisdictional allegations with "competent proof").

Here, Laurel offers an assertion in its answer, a sworn statement, and a business certificate as proof that its principal place of business is in Connecticut. In its answer, Laurel asserts that it has a principal place of business in Connecticut and a branch office in Singapore. *See* Ans., Dkt. 32 ¶¶ 3–4. Additionally, in support of its motion to vacate, Laurel attached a declaration from Nan Swan, an "Assistant Secretary" at the company who works out of Laurel's Connecticut office. *See* Swan Decl., Dkt. 34 ¶¶ 1–2. In her sworn declaration, Ms. Swan states that Laurel's principal place of business is its Connecticut office and that Laurel's officers work from that office. *Id.* ¶ 5.[15]

Laurel's proof is insufficient to establish that the exercise of general jurisdiction by a court in Connecticut would comport with due process. In *St. Paul Fire & Marine Ins. Co. v.*

---

[15]     Laurel also attached a "Registration of Trade, Business & Fictitious Name Certificate" to its motion. The Certificate, filed with the State of Delaware, lists the Connecticut office as Laurel's "Business Address." *See* Certificate, Dkt. 34-1 at 2. But the fact that a particular office is the "business address" for the company says nothing about whether it is the company's principal place of business.

*Scopia Windmill Fund, LP*, 87 F. Supp. 3d 603, 605–08 (S.D.N.Y. 2015), for example, the court considered the responsibilities and reporting relationships of fifteen officers and two other "senior management personnel" to determine the company's center of control. The court identified the principal place of business as the office with the greatest concentration of "decisionmaking authority," despite the presence of officers in numerous locations. *Id.*

Here, Laurel has not established that its principal place of business is the Connecticut office because it has presented no evidence regarding where its important decisions are made. Laurel's assertions in its answer and in the Swan declaration that its office in Connecticut is its principal place of business — without more — carry little weight. *See Benchmark Invs., Inc. v. PAVmed Inc.*, No. 20-CV-10888, 2021 WL 5967918, at \*2 (S.D.N.Y. Dec. 16, 2021) (holding that a company's principal place of business is not necessarily the site that it declares to be its "principal executive offices"); *Cofimco USA, Inc. v. Mosiewicz*, 15-CV-9118, 2016 WL 1070854, at \*4 (S.D.N.Y. Mar. 16, 2016) (finding that a declaration is not credible where it does not provide supporting details for the assertion that declarant directs, controls, and coordinates corporate affairs).

Laurel urges the Court to accept the Swan declaration as sufficient proof that the exercise of general jurisdiction over it in Connecticut would comport with due process because "courts in the Second Circuit regularly find a corporate officer's sworn statement to be sufficient proof of a corporation's principal place of business." Reply, Dkt. 51 at 4 (citing *Kanowitz v. Broadridge Fin. Solutions, Inc.*, No. 13-CV-649, 2014 WL 1338370, at \*10 (E.D.N.Y. Mar. 31, 2014)). The problem is not that Laurel has presented its evidence in the form of a sworn declaration; the problem is that the declaration is conclusory and lacks sufficient facts for the Court to determine whether Laurel's office in Connecticut is, in fact, its center of control. In *Kanowitz*, by contrast,

the court found that general jurisdiction existed based on sworn statements alleging specific facts that indicated the company is controlled in a particular location. *See Kanowitz*, 2014 WL 1338370, at *10 (identifying eight corporate officers by position that "direct, control, and coordinate" the company's operations).

Unlike the declarations considered in *Kanowitz*, the only pertinent statement in Swan's declaration is that unspecified officers work in the Connecticut office; she does not specify which officers or describe their responsibilities. *See* Swan Decl. ¶ 5. Her declaration does not establish who controls Laurel's operations or where such individuals are located. *Id.* Accordingly, the Swan declaration is insufficient to support a finding that Connecticut is Laurel's principal place of business. Without any additional evidence, Laurel has not shown that a Connecticut court's exercise of general jurisdiction would comport with due process.

In sum, Laurel has not carried its burden to show that it is subject to general jurisdiction in Connecticut under the state's long-arm statutes or that any such exercise of jurisdiction would comport with due process. Because Laurel is not subject to personal jurisdiction in Connecticut, Laurel is not present in a convenient adjacent jurisdiction for the purposes of Supplemental Rule E. Accordingly, Laurel's motion to vacate the attachment is denied.

## II.      Laurel's Motion for Partial Judgment on the Pleadings Is Granted

"Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988) (citation omitted). "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemp. Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (citation omitted). The Court must

"view the pleadings in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party." *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994) (cleaned up). In adjudicating a Rule 12(c) motion, the court examines "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice." *L-7 Designs, Inc. v. Old Navy LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (cleaned up).

In a breach of contract case, the court may grant a motion for judgment on the pleadings only if the contract is unambiguous. *See Advanced Mktg. Grp., Inc. v. Bus. Payment Sys., LLC*, 300 F. App'x 48, 49 (2d Cir. 2008). Ambiguity exists where "a contract term could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 53 (2d Cir. 2012) (internal quotation marks omitted).

Laurel argues that it is unambiguously clear under the terms of the charter party that Barnet Marine's amended demurrage claim was not timely presented. *See* Mem. of Law, Dkt. 38 at 7–8. The Court agrees. Pursuant to the charter party, Laurel is released from liability for demurrage "unless a claim in writing has been presented to Charterers, together with all supporting documentation" within 90 days of the completion of discharge. Charter Party, Dkt. 9-1 at 21. Barnet Marine alleges that it submitted its first demurrage claim for $97,500 on October 20, 2020, 35 days after the Vessel completed discharge. Amend. Compl., Dkt. 9 ¶¶ 41, 43–44. According to Barnet Marine, that demurrage claim was premised on the September 7, 2020, NOR and included all supporting documentation as required by the charter party. *Id.* ¶ 43. Neither party contests the timeliness of that claim for demurrage under the charter party.

Subsequently, Barnet Marine submitted another demurrage claim, this one for $573,437.55; it was submitted on January 29, 2021 ("January 29 Claim"), 136 days after the Vessel completed discharge, and it was premised on the NOR tendered on August 6, 2020. *Id.* ¶¶ 46–47.

Although submitted more than 90 days after discharge, Barnet Marine contends that the claim was timely because it was merely an amendment of the first claim, not a separate, second claim. *Id.* ¶ 48. Barnet Marine acknowledges, however, that it was based on an entirely different NOR and that it submitted additional documents to Laurel in support of the January 29 Claim. *Id.* ¶¶ 48, 49. Although the documents submitted on January 29 were already in Laurel's possession, Barnet Marine concedes that they were not sent with the original demurrage claim. *Id.* ¶¶ 49, 51. The Court agrees with Laurel's plain reading of the relevant provision: the January 29 Claim is time-barred because it was not presented, "together with all supporting documents," within 90 days of the completion of discharge.

Lacking federal case law on maritime time bar provisions, the parties rely on arbitral awards to support their positions. The arbitral panels, however, do not support Barnet Marine's argument that a reasonably intelligent person who is cognizant of industry practice could understand the pertinent clause in the charter party to allow claims like Barnet Marine's January 29 Claim. Only one of the arbitral decisions discussed by the parties allowed a demurrage claim to be amended outside of the period provided by the relevant time bar clause. *See Clarendon Ltd. v. Carina Int'l Shipping Corp.*, SMA Arb. No. 3277 (NY June 26, 1996). In *Clarendon*, the vessel owner amended its demurrage claim (after the time allowed by the time bar provision) to include a demurrage period that it had not included in its original, timely claim. The charter party at issue in *Clarendon* had a time bar clause that stated, in part, that "any demurrage claim must be received with full supporting documents within 50 days of completion of discharge." *Id.*

at 6. The panel found, however, that the amended claim was "still timely" because "[t]he documents previously submitted would have been the same irrespective" of which time periods were included in the demurrage calculation. *Id.*

In contrast to the situation in *Clarendon Ltd.*, the "amended demurrage claim" relied, at least in part, on different documents than the original demurrage claim. Most notably, the amended claim is premised on the August 6, 2020 NOR, which was not supplied "together with" the original claim as required by the charter party. In short, *Clarendon* thus does not support the conclusion that Barnet Marine's January 29 Claim was timely.[16]

---

[16]    It is of no moment that the documents in support of the amended demurrage claim were already in Laurel's possession. As an initial matter, the clause in the charter party unambiguously requires supporting documents to be submitted "together" with the claim, *see* Charter Party, Dkt. 9-1 at 21, which was not done in a timely way here. Reading the provision in the manner proposed by Barnet Marine would place the burden on charterers to scavenge through their files upon receipt of an out-of-time claim for demurrage, which, as long as a timely claim had been made, could, under Barnet Marine's reading, be made long after the agreed-upon time window in the charter party had closed. *See also Sea Tankers Overseas Ltd. v. Scandports Shipping Ltd.*, SMA Arb. No. 1741, 1982 WL 917295 (NY Oct. 15, 1982) ("[T]he burden of preparing the claim rests solely with the Owner, and the Charterer is under no obligation to calculate time used to determine if demurrage was incurred or not." *Id.* at *3.).

Accordingly, the Court finds that Barnet Marine's "amended" demurrage claim is barred by the charter party's time bar clause.[17]  Therefore, Laurel's motion for partial judgment on the pleadings with respect to that claim is granted.[18]

## CONCLUSION

For the foregoing reasons, Laurel's motion to vacate the attachment is DENIED and its motion for partial judgment on the pleadings is GRANTED.

By no later than **Friday, August 5, 2022**, Barnet Marine must submit a proposed amended attachment order, vacating the Court's order at docket entry 11 and replacing it with an order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment up to the amount of $97,500.

---

[17]     Laurel separately argues that, even if Barnet Marine's amended demurrage claim were found to be timely, it should be prohibited because it is based on what it contends is an invalid NOR.  Laurel contends that the August 6, 2020 NOR was invalid because the Vessel had not yet received free pratique when the NOR was tendered.  Mem. of Law, Dkt. 38 at 17–21.  Barnet Marine argues, however, that Laurel is liable in any event because a separate clause in the charter party, pertaining to the COVID-19 pandemic, excused the invalidity of the NOR.  Resp., Dkt. 49 at 19–23.  The clause at issue states, in relevant part, that "time shall count as used laytime or time on demurrage where valid NOR has not been tendered due to delay in obtaining free pratique as a result of precautions pertaining to the corona virus."  Charter Party, Dkt. 9-1 at 45.  Barnet Marine alleges that the Vessel had not received free pratique on August 6, 2020, because it was ordered into quarantine by the Hong Kong authorities after crewmembers tested positive for the coronavirus.  *See* Amend. Compl., Dkt. 9 ¶¶ 19–39.

Barnet Marine could be correct.  Pursuant to the charter party, "precautions pertaining to the corona virus" could reasonably be understood to include the quarantine period imposed on the ship because its crewmembers tested positive for the coronavirus, thereby excusing any invalidity associated with the August 6, 2020 NOR.  But because the Court finds that Barnet Marine's January 29 Claim was not timely, it need not decide this issue.

[18]     Given the Court's finding that the January 29 Claim was untimely, the only demurrage claim that remains contested is the original claim, in the amount of $97,500.  Accordingly, Barnet Marine is only entitled to an attachment of Laurel's funds in the district up to that amount.

Discovery in this matter is currently stayed. *See* Order, Dkt. 48. By no later than **Friday, August 5, 2022**, the parties must submit a joint letter on the following topics: (1) a statement describing the status of any settlement discussions and whether the parties would like a referral for a settlement conference with the assigned Magistrate Judge or to the Court-annexed mediation department; (2) if the parties are interested in settlement discussions, whether the parties would like the Court to lift or to maintain the discovery stay; (3) if the parties would like the discovery stay lifted, a brief description of the status of discovery and of any additional discovery that needs to be completed as well as proposed deadlines for the conclusion of fact and expert discovery.

The Clerk of Court is respectfully directed to terminate the open motions at docket entries 33 and 36.


**SO ORDERED.**


Date:  July 29, 2022
         New York, NY

_____
         **VALERIE CAPRONI**
         **United States District Judge**